1339

UNIVERSAL UNDERWRITERS INSURANCE COMPANY, Respondent v. METROPOLITAN PROPERTY AND LIFE INSURANCE COMPANY, Morris Motors, Inc., Richard J. Pulcino, and Patricia Brockington, Defendants, of whom Richard J. Pulcino is Appellant.

Appeal of Richard J. PULCINO.

(380 S. E. (2d) 858)

Court of Appeals

*Mark C. Tanenbaum,* of *Mark C. Tanenbaum, P.A.,* Charleston, *for appellant.*

*Bradford N. Martin,* of *Leatherwood, Walker, Todd & Mann,* Greenville, *for respondent.*

*Joseph H. McGee,* of *Buist, Moore, Smythe & McGee,* Charleston, *for defendants.*

Heard April 12, 1989.

Decided May 15, 1989.

SANDERS, Chief Judge:

Respondent Universal Underwriters Insurance Company brought this declaratory judgment action against Morris Motors, Inc. Metropolitan Property and Life Insurance Company, Patricia Brockington and appellant Richard J. Pulcino to determine its obligations under a liability insurance policy it had issued to Morris Motors. The Circuit Court ruled that the potential liability of Universal is limited to the statutory minimum of $15,000. We affirm for essentially the same reasons given by the Circuit Court.

Morris Motors is a car dealership. Mr. Pulcino, a salesman employed by Morris Motors, was injured while riding as a passenger in a car owned by Morris Motors and being test-driven by Ms. Brockington, a customer of the car dealership. Mr. Pulcino sued Ms. Brockington. Metropolitan was an insurer of Ms. Brockington under a liability insurance policy it had issued to her. Universal was an insurer of permissive users of the car under the policy it had issued to Morris Motors. Both Metropolitan and Universal were called upon to defend. Universal did not deny that Ms. Brockington was a permissive user of the car. Instead, Universal moved for summary judgment on the ground that the policy excludes coverage for the injuries of Mr. Pulcino because he was an employee of Morris Motors. Alternatively, Universal contended that the coverage is limited to $15,000, the minimum mandated by the South Carolina Motor Vehicle Financial Responsibility Act.[1]

The Court ruled that the policy does not exclude coverage for the injuries of Mr. Pulcino. However, the Court further ruled that the policy unambiguously limits coverage for Ms. Brockington to $15,000, the statutory minimum, rather than $500,000, the amount of coverage provided for others who are insured under the policy. Universal does not appeal the first part of the ruling. Mr. Pulcino appeals the second.

Two issues are presented on appeal: (1) whether the Circuit Court erred in ruling that no ambiguity exists in the policy and that, therefore, coverage is limited to the statutory minimum; and (2) whether the Circuit Court erred in ruling that the provision of the policy limiting coverage to the statuory minimum is not contrary to public policy.

## I.

Contracts of insurance, like other contracts, should be interpreted according to general rules of construction and the language employed is to be understood in its plain, ordinary and popular sense. *Gambrell v. Travelers Ins. Cos.*, 280 S. C. 69, 310 S. E. (2d) 814 (1983); *Helton v. St. Paul Fire and Marine Ins. Co.*, 286 S. C. 220, 332 S. E. (2d) 776 (Ct.

---

[1] The statutory minimum is set out in Section 56-9-820, Code of Laws of South Carolina, 1976, *repealed by* 1987 Act No. 155 § 25, effective Jan. 1, 1988 (current version at Section 38-77-140).

App. 1985). "Whether a contract is ambiguous is to be determined from the entire contract and not from isolated portions of the contract." *Farr v. Duke Power Co.*, 265 S. C. 356, 362, 218 S. E. (2d) 431, 433 (1975). "[I]n construing an insurance contract, all of its provisions should be considered, and one may not, by pointing out a single sentence or clause, create an ambiguity." *Yarborough v. Phoenix Mut. Life Ins. Co.*, 266 S. C. 584, 592, 225 S. E. (2d) 344, 348 (1976). "A contract is ambiguous only when it may fairly and reasonably be understood in more ways than one." *Gordon Farms, Inc. v. Carolina Cinema Corp.*, 294 S. C. 158, 160, 363 S. E. (2d) 235, 236 (Ct. App. 1987).

■ Written in the turgid vernacular typical of insurance policies, the language of the policy issued by Universal is stylistically inelegant but, when carefully read, unmistakable in its meaning.[2] The applicable coverage part of the policy provides as follows:

> "AUTO HAZARD" means the ownership ... or use of any AUTO [owned by Morris Motors] ... and ... furnished for the use of any person or organization.
>
> . . . .
>
> WHO IS AN INSURED.... With respect to the AUTO HAZARD:
>
> 1. YOU [meaning Morris Motors];
>
> 2. Any of YOUR [Morris Motors'] partners, paid employees, directors, stockholders, executive officers, [or] a member of their household ..., while using an AUTO covered by this Coverage Part, or when legally responsible for its use. The actual use of the AUTO must be by YOU or within the scope of YOUR permission;
>
> 3. *Any other person or organization required by law to be an INSURED* while using an AUTO covered by this Coverage Part within the scope of YOUR PERMISSION. (emphasis added)
>
> . . . .

---

[2] At the very least, whoever drafted the policy must be given credit for a "nice try." Among the words defined in the policy are the pronouns "you," "your," "we," "us" and "our." Anyone who feels constrained to define these elementary parts of speech is struggling mightily to be understood.

> THE MOST WE [meaning Universal] WILL PAY.... is:
>
> 1. With respect to ... AUTO HAZARD, [a maximum of $500,000] for any one OCCURRENCE.
>
> The portion of the limit applicable to *persons or organizations required by law to be an INSURED* is only the amount ... needed to comply with the minimum limits provisions of such law in the jurisdiction where the OCCURRENCE takes place. (emphasis added)

The general conditions of the policy provide:

> DEFINITIONS—Except for headings or titles, a word written in all capital letters indicates it has a specific meaning as defined in each Coverage Part. The following definitions apply to any Coverage Part where they appear:
>
> "INSURED" means any person or organization qualifying as an INSURED in the WHO IS AN INSURED provision of the Coverage Part. Except with respect to the limit of liability, the insurance afforded applies separately to each INSURED.

Mr. Pulcino argues that "THE MOST WE WILL PAY" provision is patently ambiguous when read in conjunction with the definition of "insured" under the Financial Responsibility Act. He calls attention to the part of the Act which specifies who is "required by law to be an INSURED."

The Financial Responsibility Act defines "insured" as follows:

> The term "insured" means the named insured and, while resident of the same household, the spouse of any such named insured and relatives of either, while in a motor vehicle or otherwise, and any person who uses with the consent, expressed or implied, of the named insured, the motor vehicle to which the policy applies and a guest in such motor vehicle to which the policy applies or the personal representative of any of the above.

Section 56-9-810(2), Code of Laws of South Carolina, 1976, *repealed by* 1987 Act No. 155 § 25, effective Jan. 1, 1988 (current version at Section 38-77-30(6).

Mr. Pulcino argues that, since each "INSURED" under the policy is required by the Act to be an "insured," each would be subject to the $15,000 limit, and this construction is, therefore, in conflict with the $500,000 limit otherwise provided by the policy. We reject this argument.

The policy clearly provides that Morris Motors and its employees, directors, stockholders, executive officers, and members of their household are covered up to $500,000 and that any other person using the car with the permission of Morris Motors is covered only up to the minimum limit required by law.

A comparison of the policy definition of "INSURED" and the statutory definition of "insured" reveals no conflict between the two. The individuals and entities required by the Act to be "insured" are provided coverage under the policy. Coverage is provided for Ms. Brockington, as a permissive user, under paragraph (3) of the provision of the policy captioned "WHO IS AN INSURED ... With respect to the AUTO HAZARD." Read as a whole, the only reasonable construction of the policy is that the provision which limits coverage to the statutory minimum applies to those who are provided coverage under paragraph (3). Thus, there is no ambiguity, patent or otherwise, in the provision of the policy limiting coverage.

## II.

Mr. Pulcino further argues that the provision of the policy limiting coverage to the statutory minimum is contrary to public policy. In support of his argument, he cites *Evans v. American Home Assurance Co.*, 252 S. C. 417, 166 S. E. (2d) 811 (1969). There, the Court held that "liability insurance not only affords protection to insured motorists, it serves the public purpose of affording protection to innocent victims of motor vehicle accidents." *Id.* at 420, 166 S. E. (2d) at 812.

In South Carolina "insurers have the right to limit their liability and to impose whatever conditions they desire upon an insured, provided they are not in contravention of some statutory inhibition or public policy." *Pennsylvania Nat. Mut. Ins. Co. v. Parker*, 282 S. C. 546, 550-51, 320 S. E. (2d) 458, 461 (Ct. App. 1984). Within these parameters, Universal

and Morris Motors had the freedom to contract for whatever terms they wanted. The Act permits coverage beyond the mandated minimum limit. The provision of the policy limiting the amount of coverage is entirely consistent with the part of the Act permitting such additional coverage:

> *Additional Coverage Permitted.* Any policy which grants the coverage required for a motor vehicle liability policy may also grant any lawful coverage in excess of or in addition to the coverage specified for a motor vehicle liability policy and *the excess or additional coverage shall not be subject to the provisions of this chapter.* With respect to a policy which grants this excess or additional coverage, *the term "motor vehicle liability policy" shall apply only to that part of the coverage which is required by this article.*

South Carolina Code § 56-9-20(7)(d) (emphasis added). It is clear that, while additional coverage is permitted by the Act, only the minimum limit is mandatory. Therefore, the act provides no basis to hold that the provision of the policy limiting coverage to the statutory minimum is contrary to public policy.[3]

In oral argument before us, counsel for Pulcino conceded that there is no statutory prohibition against limiting the coverage for classes of insured. Nev-

---

[3] While not precisely in point, three cases decided by our Supreme Court are consistent with this result. *Pennsylvania Nat. Mut. Ins. Co. v. Parker,* 282 S. C. 546, 320 S. E. (2d) 458 (Ct. App. 1984); *American Mut. Fire Ins. Co. v. Southland Motors, Inc.,* 279 S. C. 101, 302 S. E. (2d) 854 (1983); *Potomac Ins. Co. v. Allstate Ins. Co.,* 254 S. C. 107, 173 S. E. (2d) 653 (1970). Courts in other jurisdictions have construed similar statutes to require coverage only up to the minimum limits. *E.g., Nichols v. Anderson,* 837 F. (2d) 1372 (5th Cir. 1988) (applying the law of Arkansas); *State Farm Mut. Auto Ins. v. Mastbaum,* 748 P. (2d) 1042 (Utah 1987); *Guaranty Nat. Ins. Co. v. Kemper Fin. Servs.,* 667 F. Supp. 714 (D. Mont. 1987); *Equity Mut. Ins. Co. v. Spring Valley Wholesale Nursery, Inc.,* 747 P. (2d) 947 (Okla. 1987); *Tibbs v. Johnson,* 30 Wash. App. 107, 632 P. (2d) 904 (1981); *Neal's Estate v. Farmers Ins. Exch.,* 93 Nev. 348, 566 P. (2d) 81 (1977); *State Farm Auto Ins. Co. v. Shelly,* 394 Mich. 448, 231 N. W. (2d) 641 (1975); *Rocky Mountain Fire & Casualty Co. v. Allstate Ins. Co.,* 107 Ariz. 227, 485 P. (2d) 552 (1971); *Hartford Accident & Indem. Co. v. Kaiser,* 242 Or. 123, 407 P. (2d) 899 (1965); *Iszczukiewicz v. Universal Underwriters Ins. Co.,* 182 F. Supp. 733 (N. D. Ohio 1960) (aff'd 290 F. (2d) 590 (6th Cir. 1961) ); *Landis v. New Amsterdam Casualty Co.,* 347 Ill. App. 560, 107 N. E. (2d) 187 (1952); *Farm Bureau Auto Ins. Co. v. Martin,* 97 N. H. 196, 84 A. (2d) 823 (1951).

ertheless, he persists in his argument that it is unconscionable to allow an auto dealership to bargain for less coverage for its customers than for itself and its officers. He acknowledges that, to reach this result, we would have to "carve out a special exception for automobile dealers." We have no authority to do so. *See Smith v. Wallace*, 295 S. C. 448, 452, 369 S. E. (2d) 657, 659 (Ct. App. 1988) ("This Court has no legislative powers.").

For these reasons, the judgment of the Circuit Court is

Affirmed.

SHAW, J., and LITTLEJOHN, Acting Judge, concur.

