Hillsborough
No. 90-081

UNIVERSAL UNDERWRITERS INSURANCE COMPANY

v.

ALLSTATE INSURANCE COMPANY

June 7, 1991

*Yakovakis, McDonough & Lindh,* of Manchester (*James G. Walker* on the brief and orally), for the plaintiff.

*Wiggin & Nourie,* of Manchester (*Doreen F. Connor* and *Gary M. Burt* on the brief, and *Mr. Burt* orally), for the defendant.

BATCHELDER, J.   The defendant, Allstate Insurance Company (Allstate), appeals the decision of the Superior Court (*Goode,* J.) in a declaratory judgment action filed by the plaintiff, Universal Underwriters Insurance Company (Universal), requesting a declaration of Allstate's obligation to share responsibility, where there were two insurance policies covering a single accident. Allstate argues that the trial court erred when it ruled that Allstate was obligated to share defense and indemnity expenses with Universal on a pro rata basis. For the reasons that follow, we reverse.

The facts are not in dispute. On September 18, 1981, Thomas Semeraro was operating a 1981 Honda Accord owned by Peters Auto Leasing of Nashua. Semeraro was using the Honda as a replacement for his own motor vehicle, a 1976 Oldsmobile, which was undergoing repairs at the time. While commuting home from work, in Lexington, Massachusetts, Semeraro ran over a pedestrian who had previously been struck by another vehicle. The pedestrian died as a result of his injuries, and Semeraro was sued by the victim's estate.

Prior to the date of the accident, Universal had issued a policy of insurance to the owner of the accident vehicle, Peters Auto Leasing. Universal's policy provided, pursuant to its "other insurance" clause, that if an owned auto was in the care, custody, or control of any person or organization other than Peters Auto Leasing (the "named insured"), the liability coverage provided in the insurance contract would be "excess." Semeraro insured his personal motor vehicle with Allstate, and his insurance policy provided, under its "other insurance" clause, that when an insured was operating a temporary substitute automobile, Allstate coverage would be excess over any other collectible insurance. Thus, in this case, both Universal and Allstate purport to make their policies "excess" over other insurance.

Universal made demand upon Allstate to provide primary coverage for the loss. Allstate declined on the ground that Allstate's policy provided only excess coverage. Allstate also refused to participate in the $250,000 settlement of the underlying tort claim. Subsequently, Universal instituted this action seeking a pro rata indemnity from Allstate. Indemnity was also sought against Allstate for the pro rata share of the $11,606.07 costs of defense. The case was submitted on an agreed statement of facts, resulting in the trial court's ruling that the "excess" clauses in the two policies were mutually repugnant and

must be disregarded, and that each insurer was liable for a pro rata share of the settlement based upon applicable limits contained in each policy. It is from this order that Allstate appeals.

Allstate argues that our decision in *Liberty Mutual Insurance Co. v. Home Insurance Indemnity Co.*, 116 N.H. 12, 351 A.2d 891 (1976) governs this appeal and, therefore, that the provision in the Universal policy that its coverage is "excess" when the insured vehicle is operated by a permissive user is invalid under the Financial Responsibility Act, RSA 259:61. We agree.

In *Liberty Mutual* we examined the validity of a clause which purported to make coverage for an insured who was operating a non-owned vehicle "excess insurance over any other valid and collectible insurance." *Liberty Mutual, supra* at 17, 351 A.2d at 894. We held that such a provision was invalid, because it violated the mandate of the Financial Responsibility Law, which prescribed (on that date) a required minimum coverage for injury to any one person of $15,000. *Liberty Mutual*, 116 N.H. at 17, 351 A.2d at 895; *see also* RSA 268:1, VII(a) (1975) (currently codified at RSA 259:61, I). The Universal policy that we are asked to examine contains the same attempt to fashion its coverage for non-owned vehicles as "excess" insurance, an attempt which must fail for the same reason.

Universal's "excess clause" language makes the risk which Universal underwrote minimal. Under the Universal policy, it remained primarily liable only when an agent of Peters Auto Leasing was operating the insured vehicles or when the lessee did not have personal coverage. In the vast majority of situations, the liability coverage provided by Universal would become "excess," and the purchased coverage therefore minimal. Even so, Universal contends that such a result does not violate the Financial Responsibility Law.

Universal argues that *Liberty Mutual* should be distinguished from the present case because the offending "excess" clause in *Liberty Mutual* was in a policy written by an insurance carrier that was attempting to avoid providing coverage, while Universal has already made payment of $250,000 in Semeraro's behalf. Universal further contends that it merely seeks to derive the benefit of its policy language at the expense of Allstate, not at the expense of the insured and, therefore, that the intent of the Financial Responsibility Law is not undermined by its action. We are not persuaded that violation of the clear language of the statute is permitted when the result adversely affects another insurance carrier rather than the insured. If the legislature had intended such a result-oriented proscription, it

was free to draft the statute to so provide. Consequently, we decline to accept Universal's invitation to redraft the statute. *See Ellis v. Royal Ins. Co.*, 129 N.H. 326, 334, 530 A.2d 303, 308 (1987) (statute will not be redrafted to meet an intention not expressed in its language).

Universal maintains that the public policy behind the Financial Responsibility Law is to provide protection to those injured by the negligence of others, and that this policy is not undermined by holding that insurers may be required to share the obligation of providing coverage for a mutual insured. The Financial Responsibility Law, however, is directed to individuals, whereas the insurance policies we are called upon to interpret today are directed to particular vehicles. Universal further contends that "other jurisdictions" have adopted its argument with respect to "excess" insurance and their States' financial responsibility acts. *See, e.g., Western Cas. & Surety Co. v. Universal Underwriters Ins. Co.*, 232 Kan. 606, 608–09, 657 P.2d 576, 578 (1983) ("excess" insurance clauses do not limit statutorily mandated coverage and thus do not violate State financial responsibility statute or public policy). However, we have clearly addressed this issue in *Liberty Mutual*.

■■■■ "The parties to an insurance contract may not by agreement limit the required coverage in contravention of the [Financial Responsibility Law]." *Peerless Ins. Co. v. Vigue*, 115 N.H. 492, 494, 345 A.2d 399, 400 (1975). Hence, a provision which conflicts with the Financial Responsibility Law cannot be a valid part of the contract of insurance. Therefore, it has no effect, at least up to the minimum limits of liability provided by the Financial Responsibility Law. *See id.* at 494–95, 345 A.2d at 400. Accordingly, we hold that Universal must provide primary coverage to Semeraro up to $25,000, which is the minimum limit currently established by the Financial Responsibility Law. Once this minimum limit has been met, however, it is not improper for Universal to make its coverage "excess." Consequently, at that point, both Universal and Allstate would provide "excess" coverage. The "excess" coverage provisions in the two policies are mutually repugnant and must be disregarded, and each insurer is liable for its pro rata share of the settlement based on the policy limits. *See* 16 COUCH ON INSURANCE 2d § 62:33 (rev. ed. 1983); *see also Liberty Mutual*, 116 N.H. at 18, 351 A.2d at 895. We therefore hold that the cost of settlement in this case in excess of $25,000 is to be shared pro rata by Universal and Allstate.

The trial court further ruled that Universal and Allstate should share the cost of defense on a pro rata basis. However, the duty of an insurer to defend is the same whether its potential liability is either as a primary or as an excess carrier. *Zurich Ins. Co. v. New Amsterdam Cas. Co.*, 117 Ga. App. 426, 428, 160 S.E.2d 603, 605 (1968); *see also* 14 COUCH ON INSURANCE 2d § 51:148 (rev. ed. 1982). In *Liberty Mutual* we held that both insurance companies had a joint obligation to defend the insured and "to share equally the costs of defense." *Liberty Mutual*, 116 N.H. at 18, 351 A.2d at 895. Accordingly, because Universal has borne the total expense of Semeraro's defense, Allstate must reimburse Universal for one-half of those costs.

*Reversed.*

All concurred.