565 S.E.2d 114

**Colonel Donald HANSEN, Parent and Guardian and On Behalf of His Two Minor Children Donald HANSEN and Katherine Hansen, Appellant,**

v.

**UNITED SERVICES AUTOMOBILE ASSOCIATION, Respondent.**

No. 3486.

Court of Appeals of South Carolina.

Submitted April 8, 2002.

Decided April 29, 2002.

Rehearing Denied July 1, 2002.

---

64

John J. Johnson; and Eric C. Fosmire, of Collins & Lacy, both of Columbia, for appellant.

Robert Y. Knowlton and Franklin H. Turner, III, both of Haynsworth, Sinkler & Boyd, of Columbia, for respondent.

GOOLSBY, Judge:

Donald G. Hansen, acting on behalf of his two minor children, filed this action against his insurance carrier, United Services Automobile Association (USAA), seeking declaratory relief based on USAA's interpretation of the family member exclusion in Hansen's insurance policy. The trial court granted USAA summary judgment. Hansen appeals. We affirm.[1]

### Facts

On May 31, 1998, while traveling from Ohio, Deborah S. Hansen and her two minor children were involved in a single-car accident in Laurens County, near Clinton, South Carolina.

---

1. Because oral argument would not aid the court in resolving the issues on appeal, we decide this case without oral argument pursuant to Rule 215, SCACR.

As a result of the accident, Ms. Hansen died and the two children sustained injuries.

At the time of the accident, the family's automobile was covered by a liability insurance policy issued by USAA. The policy provided a maximum limit of liability coverage for bodily injury by any one person of $100,000 and a limit of $200,000 for all bodily injury damages resulting from any one accident. The policy contained a family exclusion provision:

> We do not provide Liability Coverage for you or any **family member** for [bodily injury] to you or any **family member** to the extent that the limits of liability for this coverage exceed the limits of liability required by the Ohio financial responsibility law.

(bold in original). Immediately following the family exclusion provision, the policy contains an additional provision entitled "Out of State Coverage":

> If an auto accident to which the policy applies occurs in any state or province other than the one in which **your covered auto** is principally garaged, your policy will provide *at least* the minimum amounts and types of coverages required by law.

(boldface in original; emphasis added).

At the time of the accident, the minimum coverage required by South Carolina was $30,000 per accident.[2] The minimum required by Ohio was $25,000 per accident.[3] In February, 1999, USAA offered Hansen the amount of Ohio's minimum statutory requirement: $25,000 coverage for the two children. Four months later, USAA offered him $30,000 in compliance with South Carolina's statutory minimum.

On December 29, 1999, Hansen filed a complaint against USAA, seeking declaratory relief based on breach of contract, violation of the South Carolina Unfair Claims Practices Act, and bad faith arising out of USAA's refusal to provide coverage in excess of the statutory minimums. Relying on the family exclusion provision of the policy, USAA filed a motion requesting summary judgment on all the claims. On Novem-

2. S.C.Code Ann. § 38–77–140 (2002).

3. Ohio Rev.Code Ann. § 4509.01(K) (Anderson 2001).

ber 7, 1999, the trial court heard arguments. On December 12, 2000, the court granted USAA's motion for summary judgment. This appeal followed.

## Standard of Review

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." [4]

"Under Rule 56(c), SCRCP, the party seeking summary judgment has the initial burden of demonstrating the absence of a genuine issue of material fact." [5] Once the party moving for summary judgment meets the initial burden of showing an absence of evidentiary support for the opponent's case, the opponent cannot simply rest on mere allegations or denials contained in the pleadings.[6] Rather, the non-moving party must come forward with specific facts showing there is a genuine issue for trial.[7]

In determining whether any triable issues of fact exist, the evidence and all reasonable inferences therefrom must be viewed in the light most favorable to the party opposing summary judgment.[8] "The construction and enforcement of an unambiguous contract is a question of law for the court, and thus can be properly disposed of at summary judgment." [9]

---

4. Rule 56(c), SCRCP; *Tupper v. Dorchester County*, 326 S.C. 318, 325, 487 S.E.2d 187, 191 (1997).

5. *Baughman v. American Tel. & Tel. Co.*, 306 S.C. 101, 116, 410 S.E.2d 537, 546 (1991).

6. *Id.* at 115, 410 S.E.2d at 545.

7. Rule 56(e), SCRCP; *SSI Med. Servs., Inc. v. Cox*, 301 S.C. 493, 497, 392 S.E.2d 789, 792 (1990).

8. *Summer v. Carpenter*, 328 S.C. 36, 42, 492 S.E.2d 55, 58 (1997).

9. *Middleborough Horizontal Prop. Regime Council of Co–Owners v. Montedison S.p.A.*, 320 S.C. 470, 477, 465 S.E.2d 765, 770 (Ct.App. 1995).

## Law/Analysis

### I. Policy Interpretation

Hansen contends the trial court erred in holding that the policy language is unambiguous and in granting summary judgment to USAA. We disagree.

An insurance contract is subject to the general rules of contract construction.[10] "The purpose of all rules of construction is to ascertain the intention of the parties to the contract." [11] Where the terms of a contract are clear and unambiguous, its construction is for the court; but where the terms are ambiguous, the question of the parties' intent must be submitted to the jury.[12] "A contract is ambiguous when it is capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business." [13] Furthermore, "[a] contract is ambiguous only when it may fairly and reasonably be understood in more ways than one." [14] "[I]n construing an insurance contract, all of its provisions should be considered, and one may not, by pointing out a single sentence or clause, create an ambiguity." [15] "Where language used in an insurance contract is ambiguous, or where it is capable of two reasonable interpretations, that construction which is most favorable to the insured will be adopted." [16]

---

**10.** *Standard Fire Ins. Co. v. Marine Contracting & Towing Co.,* 301 S.C. 418, 421, 392 S.E.2d 460, 461 (1990).

**11.** *Bruce v. Blalock,* 241 S.C. 155, 161, 127 S.E.2d 439, 442 (1962).

**12.** *Holcombe v. Orkin Exterminating Co.,* 282 S.C. 104, 105, 317 S.E.2d 458, 459 (Ct.App.1984).

**13.** *Hawkins v. Greenwood Dev. Corp.,* 328 S.C. 585, 592, 493 S.E.2d 875, 878 (Ct.App.1997) (citations omitted).

**14.** *Universal Underwriters Ins. Co. v. Metropolitan Prop. & Life Ins. Co.,* 298 S.C. 404, 407, 380 S.E.2d 858, 860 (Ct.App.1989) (citations omitted)

**15.** *Id.*

**16.** *Poston v. National Fid. Life Ins. Co.,* 303 S.C. 182, 187, 399 S.E.2d 770, 772 (1990) (citations omitted).

For accidents occurring in Ohio, Hansen concedes the policy limits coverage available to family members is the minimum limits required by Ohio law: $25,000 per accident.[17] For accidents occurring outside of Ohio, Hansen interprets the policy language as meaning that the insurance company will pay "at least" the mandatory out-of-state statutory minimums—$30,000 in this instance—and that the next level of coverage would be the $200,000 policy limits. In other words, Hansen argues, if the accident occurs out of state, the family member exclusion goes out the window altogether and the insured gets the face value of the policy. In the alternative, Hansen argues the policy is ambiguous and therefore is to be construed in his favor, again affording him the policy limits.[18]

For accidents occurring outside of Ohio, USAA maintains the policy limits coverage to out-of-state statutory minimums and the phrase "at least" does not imply the policy will pay the policy limits. USAA also contends the "at least" phrase does not create any ambiguities. Thus, USAA maintains its exposure in this accident is capped at the mandatory minimum liability insurance required in South Carolina: $15,000 per person or $30,000 per occurrence.

■ Hansen's interpretation of the policy is not a fair one. The situs of the accident should not produce such disparate results: $25,000 in Ohio versus $200,000 out-of-state.[19] Hansen offers no explanation for such disparity. On the other hand, to interpret the Hansen policy as limiting the family coverage to the minimum limits of South Carolina is fair and reasonable and gives effect to all relevant policy provisions.

17. Ohio Rev.Code Ann. section 4509.01(K) (Anderson 2001) provides $25,000 minimum amount of liability coverage per accident.

18. *See Quinn v. State Farm Mut. Auto. Ins. Co.*, 238 S.C. 301, 304, 120 S.E.2d 15, 16 (1961) (citations omitted) ("[W]here the words of an insurance policy are ambiguous or where they are capable of two reasonable interpretations, that interpretation will be adopted which is most favorable to the insured.").

19. *See Bruce v. Blalock*, 241 S.C. at 161, 127 S.E.2d at 442 (citations omitted) ("All contracts should receive a sensible and reasonable construction, and not such a one as will lead to absurd consequences or unjust results.").

*Western States Insurance Co. v. Zschau*[20] examines a policy provision that is similar to the Hansen policy. The pertinent part of the *Zschau* "out-of-state" clause reads as follows:

A. If the state or province has:

\* \* \*

2. A compulsory insurance or similar law requiring a nonresident to maintain insurance whenever the nonresident uses a vehicle in that state or province, your policy will provide *at least* the required minimum amounts and types of coverage.[21]

(emphasis added). The *Zschau* court opined, "[W]e do not believe that the 'out of state' coverage provision operates to expand any of [the insurer's] coverage obligations under the policy." [22] The court concluded that any additional coverages, such as underinsured motorist protection, were a matter of contract between the parties.[23]

None of the other courts construing similar "out of state" coverage clauses have found the language to be ambiguous or vague.[24] "Rather, each of these courts has found that the plain language of this provision requires that an insured who is subject to compulsory financial responsibility laws of anoth-

---

**20.** 298 Ill.App.3d 214, 232 Ill.Dec. 360, 698 N.E.2d 198 (1998).

**21.** *Id.* at 200.

**22.** *Id.* at 204.

**23.** *Id.* at 203; *see Sotirakis v. United Serv. Auto. Ass'n*, 106 Nev. 123, 787 P.2d 788, 791 (1990) (holding that it was unlikely the insureds expected the family exclusion clause to be void while they traveled out of state, and USAA probably had no expectation of having its family exclusion clause rendered void when its insureds left the state; it appeared both parties bargained for an insurance policy which contained a family exclusion clause); *Jarrett v. Pennsylvania Nat'l Mut. Ins. Co.*, 400 Pa.Super. 565, 584 A.2d 327, 329 (1990) (holding that a policy that contained an "out-of state" clause with "at least" language provided only the level of coverage required by the situs state of non-resident owners; the court noted the insurer could have contracted to provide more coverage than was required but did not).

**24.** *Zschau* at 203.

er state must be provided coverage up to the minimum required amount." [25]

Hansen argues, in particular, that the "at least" phrase creates coverage in the amount of the policy limits. A similar argument was litigated in *Atkins v. Hartford Casualty Insurance Co.,*[26] a case with the following policy provision:

> If an auto accident to which this policy applies occurs in any state or province other than the one in which your covered auto is principally garaged, we will interpret your policy for that accident as follows:
>
> * * *
>
> 2. A compulsory insurance or similar law requiring a nonresident to maintain insurance whenever the nonresident uses a vehicle in that state or province, your policy will provide *at least* [the required] minimum amounts and types of coverage.[27]

(emphasis added). In *Atkins,* the appellant argued "[t]he phrase 'at least' implies the possibility of more coverage if more is provided for in the policy." [28] The court held no policy provision provided other coverage; thus, the phrase "at least" was of no consequence in that instance.[29]

In the Hansen policy, the "at least" phrase merely anticipates the possibility of coverage "in addition to the minimum amounts and types of coverage required by law." Any additional coverage provided Hansen would have to be a matter of contract between him and USAA. Because Hansen did not bargain for any such additional coverage, the "at least" phrase, as in *Atkins,* is of no consequence.

Insurers have the right to limit their liability and to impose whatever conditions they desire upon an insured, provided

25. *Id.*

26. 801 F.2d 346 (8th Cir.1986).

27. *Id.* at 347.

28. *Id.* at 348.

29. *Id.*

they are not contravening a statute or public policy.[30] The premium charged reflects the exclusions contained in the policy.

The majority of compulsory insurance jurisdictions have invalidated household exclusions clauses only to the extent of the statutorily prescribed mandatory minimum liability coverage.[31] In *United Services Automobile Ass'n v. Markosky*, South Carolina aligned itself with the majority view: "Reasonable exclusionary clauses which do not conflict with the legislative expression of the public policy of the State as revealed in the various motor vehicle insurance statutes are permitted." [32] We therefore hold USAA owes no further coverage under the policy.

## II. Bad Faith and Unfair Insurance Practices

Hansen argues the trial court erred in granting summary judgment on the issues of bad faith and unfair insurance practices; he contends further development of the facts is necessary. We disagree.

### A.

 Bad faith refusal to pay benefits under a contract of insurance includes (1) the existence of a mutually binding contract of insurance between the plaintiff and defendant; (2) a refusal by the insurer to pay benefits due under the contract; (3) the refusal is the result of the insurer's bad faith or unreasonable action in breach of an implied covenant of good faith and fair dealing arising on the contract; (4) the refusal to pay causes damage to the insured.[33] Generally, if there is a

---

**30.** *Pennsylvania Nat'l Mut. Cas. Ins. Co. v. Parker*, 282 S.C. 546, 551, 320 S.E.2d 458, 461 (Ct.App.1984).

**31.** *Van Horn v. Atlantic Mut. Ins. Co.*, 334 Md. 669, 641 A.2d 195, 207 (1994); *see also Powell v. State Farm Mut. Auto. Ins. Co.*, 86 Md.App. 98, 585 A.2d 286, 294 (Md.1991) (aligning itself with majority view that "exclusions in liability insurance policies are valid and enforceable as to amounts exceeding coverage required in financial responsibility laws").

**32.** 340 S.C. 223, 226, 530 S.E.2d 660, 662 (Ct.App.2000) (citations omitted).

**33.** *Howard v. State Farm Mut. Auto. Ins. Co.*, 316 S.C. 445, 451, 450 S.E.2d 582, 586 (1994).

reasonable ground for contesting a claim, the denial of the claim does not constitute bad faith.[34]

Hansen argues he bargained for and paid the premiums for liability insurance coverage far greater than the mandatory minimum he is receiving. Our disposition of the policy interpretation negates this bad faith claim; he is getting exactly what he bargained for—nothing more, nothing less.

## B.

Hansen alleges USAA engaged in unfair insurance practices under S.C.Code Ann. section 38–59–20(6).[35] USAA attempted to settle the Hansen claim for the Ohio minimum limit of $25,000 but later offered the South Carolina limit of $30,000. Hansen asks for further development of the issues to ascertain whether this low initial offer is a continuing practice of USAA. Hansen failed to raise this argument to the trial court; thus we find this argument is not preserved.[36]

## Conclusion

The court notes this is indeed a tragic case; however, "[t]he Court cannot exercise its discretion as to the content of such contract or substitute its own construction for the agreement clearly entered into between the parties." [37]

**AFFIRMED.**

ANDERSON, J., and THOMAS, A.J., concur.

---

**34.** *Cock–N–Bull Steak House v. Generali Ins. Co.*, 321 S.C. 1, 6, 466 S.E.2d 727, 730 (1996).

**35.** S.C.Code Ann. section 38–59–20(6) (2002) lists the following as an improper claims practice: "Offering to settle claims, including third-party liability claims, for an amount less than the amount otherwise reasonably due or payable based upon the possibility or probability that the policyholder or claimant would be required to incur attorneys' fees to recover the amount reasonably due or payable."

**36.** *Hundley v. Rite Aid of S.C., Inc.*, 339 S.C. 285, 306, 529 S.E.2d 45, 56 (Ct.App.2000) (holding that an argument is not preserved for appeal where it has not been raised to or ruled upon by the trial court).

**37.** *Bruce v. Blalock*, 241 S.C. at 161, 127 S.E.2d at 442 (citations omitted).