**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 13-1017

THOMAS S. LINTON, JR.,

            Plaintiff – Appellant,

      v.

AXA EQUITABLE LIFE INSURANCE COMPANY, f/k/a Equitable Life
Assurance Society of the United States,

            Defendant - Appellee.

Appeal from the United States District Court for the District of
South Carolina, at Charleston.  William O. Bertelsman, Senior
District Judge for the Eastern District of Kentucky, sitting by
designation. (2:11-cv-03536-WOB)

Submitted:  June 19, 2013          Decided:  July 16, 2013

Before WILKINSON, WYNN, and FLOYD, Circuit Judges.

Affirmed by unpublished per curiam opinion.

Robert T. Lyles, Jr., LYLES & LYLES, LLC, Charleston, South
Carolina, for Appellant.  D. Larry Kristinik, William C. Wood,
Jr., NELSON MULLINS RILEY & SCARBOROUGH, LLP, Columbia, South
Carolina, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Thomas Linton, Jr., appeals the district court's order granting AXA Equitable Life Insurance Company's ("AXA") motion for summary judgment and dismissing his complaint.[*] We affirm.

Linton purchased a Disability Income Policy from AXA in 1985. In 2010, Linton was injured from an accidental exposure to formaldehyde during a mold remediation effort in his home; this injury led to the claim for benefits from AXA. After an investigation, AXA denied Linton benefits under the policy, stating that because Linton was retired he was ineligible for benefits.

The relevant language in the Disability Income Policy states:

> TOTAL DISABILITY INCOME. If disability (1) starts while this policy is in force; and (2) continues beyond the Elimination Period: we will pay the Monthly Income for each month of the period of disability that extends beyond the Elimination period. . . .

(J.A. 77).

---

[*] Linton's notice of appeal purports to appeal both the district court's order dismissing his complaint and the order denying his Fed. R. Civ. P. 59(e) motion. However, because Linton does not address the denial of the Rule 59(e) motion in his opening brief, we consider this issued abandoned. See A Helping Hand, LLC v. Baltimore County, 515 F.3d 356, 369 (4th Cir. 2008) ("It is a well settled rule that contentions not raised in the argument section of the opening brief are abandoned.").

2

The policy contains the following definitions that are used to determine who is eligible to receive benefits:

DISABLED or DISABILITY means Total Disability.

YOUR REGULAR OCCUPATION means the occupation (or occupations, if more than one) in which you are regularly engaged for gain or profit at the time you become disabled.

TOTAL DISABILITY means your inability due to injury or sickness to engage in the substantial and material duties of your regular occupation. It will not be considered to exist for any time you are not under the regular care and attendance of a doctor.

(J.A. 76).

On appeal, Linton argues that (1) it was error for the district court to grant summary judgment to AXA because the language of the Disability Income Policy creates a question of fact with respect to whether it provides benefits to a retired policyholder; and (2) the district court erred in denying Linton the opportunity to conduct discovery into AXA's handling of other similar claims.

We review de novo a district court's order granting summary judgment. Providence Square Assocs., L.L.C. v. G.D.F., Inc., 211 F.3d 846, 850 (4th Cir. 2000). Summary judgment should be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party

3

for a jury to return a verdict for that party.  If the evidence is merely colorable, or is not significantly probative, summary judgment" is proper.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986) (citations omitted).

Under South Carolina law, "[a]n insurance contract is subject to the general rules of contract construction." Hansen ex rel. Hansen v. United Servs. Auto. Ass'n, 565 S.E.2d 114, 116 (S.C. Ct. App. 2002) (citation omitted).  Moreover, "[t]he purpose of all rules of construction is to ascertain the intention of the parties to the contract."  Id. (citation omitted).

"If the contract's language is clear and unambiguous, the language alone determines the contract's force and effect." Schulmeyer v. State Farm Fire & Cas. Co., 579 S.E.2d 132, 134 (S.C. 2003) (citation omitted).  "[W]hen an insurance policy . . . is susceptible to more than one reasonable interpretation, one of which would provide coverage, [courts] must hold as a matter of law in favor of coverage."  Gaskins v. Blue Cross-Blue Shield of South Carolina, 245 S.E.2d 598, 602 (S.C. 1978) (citation omitted); see also Goldston v. State Farm Mut. Auto. Ins. Co., 594 S.E.2d 511, 518 (S.C. Ct. App. 2004) ("Where language used in an insurance contract is ambiguous, or where it is capable of two reasonable interpretations, that construction which is most favorable to the insured will be adopted.")

4

(internal quotation marks and citation omitted).  In determining the meaning of contract terms, the court "must give policy language its plain, ordinary, and popular meaning."  B.L.G. Enters., Inc. v. First Fin. Ins. Co., 514 S.E.2d 327, 330 (S.C. 1999).

The rule of strict construction against an insurer does not, however, authorize a perversion of language or the exercise of inventive powers for the purpose of creating an ambiguity where none exists, S.S. Newell & Co. v. American Mut. Liab. Ins. Co., 19 S.E.2d 463, 467 (S.C. 1945), nor should courts torture the meaning of policy language to extend or defeat coverage that was never intended by the parties, Torrington Co. v. Aetna Cas. & Sur. Co., 216 S.E.2d 547, 550 (S.C. 1975).  Rather, if the meaning of a particular word or phrase cannot be determined from the language itself, a court must read the policy as a whole and consider the context and subject matter of the insurance contract in order to discern the parties' intention.  See Yarborough v. Phoenix Mut. Life Ins. Co., 225 S.E.2d 344, 348-49 (S.C. 1976).

Here, the district court analyzed the language of the policy, and in ruling on AXA's motion for summary judgment, expressly concluded that it was not ambiguous.  We agree. Linton advances a variety of dictionary definitions for terms contained within the policy, specifically "gain," "profit," and

5

"occupation," in support of his contention that the terms of the insurance agreement should be construed in his favor.  It strains credulity to accept that "[b]roadly construing the words 'gain' and 'profit,' given their plain and ordinary meaning, results in the conclusion that Linton's pre-disability duties and activities [as a retired person] were for his 'gain' or 'profit' from a monetary, social and personal standpoint." (Appellant's br. at 11).  The district court correctly rejected Linton's contention that gain or profit could have a plain meaning other than traditional monetary compensation, and noted that Linton's arguments were merely "an attempt to fit his square-shaped situation into the round hold provided by [the policy] terms."  (J.A. 157).

Furthermore, the district court properly found that even if it accepted Linton's definitions of "occupation," "gain," and "profit," Linton's argument would still fail when the words are read within the definition as a whole, as required by South Carolina contract law.  See McGill v. Moore, 672 S.E.2d 571, 574 (S.C. 2009); (J.A. 157).  When it elaborated on this finding, the district court noted

> if the policy definition of YOUR REGULAR OCCUPATION
> was meant to include those individuals who were
> retired, then there would be no need to include the
> phrase "for gain or profit" to further explain the
> term "occupation."  Even Plaintiff's proffered
> definition of the term "profit" only lends itself to a
> monetary context.  Thus, reading the definition of

6

> YOUR REGULAR OCCUPATION as a whole only allows for an interpretation that the policy holder is required to hold an occupation for which he receives compensation, rather than merely the "pursuit of pleasure."

(J.A. 158).

As the district court properly concluded, the terms are not ambiguous, and Linton is ineligible for benefits under the policy because he was not employed for gain or profit at the time he became disabled.

Linton also argues that the district court erred in refusing further discovery into how AXA handled comparable claims. This argument is without merit. As the district court correctly noted, Linton's request for discovery regarding the handling of other claims was intended to support his allegations of bad faith on the part of AXA. However, before allegations of bad faith can be pursued, the insured must demonstrate that he was entitled to benefits under the policy. Because Linton was not entitled to benefits under the policy, the district court correctly concluded that further discovery was unnecessary.

Accordingly, we affirm the judgment of the district court. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before this court and argument would not aid the decisional process.

AFFIRMED

7